# CIRCUIT COURT OF THE CITY OF NORFOLK

Cynthia L. Baird,
Administrator of the Estate of
Janet Louise Barnes,
deceased

v.

Gordon K. Stokes et al.

February 2, 2012

Case No. (Civil) CL10-227

By Judge John R. Doyle, III

This matter is now before the Court for resolution of responsive pleadings filed by Defendant, Sentara Health Systems (Sentara), and Defendant, Gordon K. Stokes, M.D., and VTS of Hampton Roads, d/b/a Vascular & Transplant Specialists, P.C. (Stokes). Specifically, these pleadings are Sentara's Special Plea of Lack of Duty/Agency and Immunity and Stokes' Special Plea of Lack of Duty and Special Plea of Sovereign Immunity.

The Court previously ruled that the State Tort Claims Act did not apply to Eastern Virginia Medical School (EVMS) and thus dismissed the Plaintiff's claim against the Commonwealth of Virginia. Additionally, the Plaintiff's claims against EVMS, Dr. Shin, and Dr. Poulin were dismissed based upon those Defendants' Pleas in Bar of Sovereign Immunity.

*Facts*

Dr. Shin was a fifth-year resident in the employ of EVMS. Dr. Poulin was a third-year resident in the employ of EVMS. Dr. Stokes was a surgeon with Vascular and Transplant Specialist. Dr. Stokes also was on the faculty of EVMS. Sentara owned the facility within which Ms. Barnes was a patient.

The most salient fact pertaining to these Pleas in Bar by Stokes and Sentara is that, according to the Complaint, the only persons who committed acts of negligence were Dr. Shin, Dr. Poulin, and Dr. Schmeider. However, note that Dr. Schmeider was recently nonsuited after Plaintiff counsel's statement that discovery revealed that he "did nothing wrong."

The Complaint alleges no negligent acts by either Stokes or any Sentara employee. Plaintiff's position is that Stokes and Sentara are liable under *respondeat superior* to pay money damages for the independent negligent acts of Dr. Shin and/or Dr. Poulin.

Ms. Barnes was transferred from Sentara Leigh Hospital to Sentara Norfolk General Hospital for treatment of an ischemic leg. Dr. Stokes performed the surgery assisted by Dr. Shin. After the surgery, Ms. Barnes was placed in the intensive care unit (ICU) where she was under the direct care of Dr. Shin. Dr. Shin determined that Ms. Barnes needed a central venous line. This was a decision and procedure that Dr. Shin was authorized to make independently. This authorization was granted by EVMS.

The details of what transpired next are not pertinent to the issue before the Court. Suffice it to say that it is alleged that Dr. Shin and/or Dr. Poulin negligently caused Ms. Barnes' death by the manner in which they attempted to insert this "central line."

Through testimony, it has been established that EVMS controls the hiring, training, curriculum, schedules, and supervision of the residents. In the event of unsatisfactory performance, EVMS decides appropriate repercussions and termination of residents. The residents are on the EVMS payroll. EVMS is responsible for deciding what procedures the residents may perform. EVMS gives the residents the authority to perform central lines independently. An attending supervises the residents with respect to direct supervision during surgery they may be performing with him. However, if the residents are doing a procedure that EVMS has given them authority to do on their own, then the residents perform that procedure independently of the attending.

EVMS does not own a hospital. In the words of Dr. Britt, Sentara is a venue for EVMS and the residents to conduct their training. (EVMS also sends residents to non-Sentara facilities such as Children's Hospital of the King's Daughters and Bon Secours DePaul Hospital.)

### Analysis

In the face of prior decisions and the Court's findings that EVMS and its residents are entitled to sovereign immunity and that EVMS does not fall under the State Tort Claims Act, the plaintiff advances agency theories to hold the surgeon and hospital liable for money damages for the negligent acts of residents in their treatment of a patient post-operatively in the ICU.

The parties are in agreement that a four-pronged test provides the basis for finding an agency relationship, as illustrated in *Hadeed v. Medic-24, Ltd.*, 237 Va. 277 (1989). The four-prongs that enter into a determination of whether a master-servant relationship exists within the contemplation of the doctrine of *respondeat superior* are (1) selection and engagement of the servant, (2) payment of compensation, (3) power of dismissal, and (4)

power of control. *Hadeed*, 237 Va. at 288. The first three prongs are not essential to the existence of the relationship; however the power of control is determinative. *Id.*

EVMS selected and hired the residents. EVMS assigned the residents to various facilities in a rotation according to their training and specialties. EVMS exercised all control over the clinical activities of the residents. EVMS compensated the residents. Only EVMS has the authority to discharge residents from the program. Conversely, Sentara did not engage in the decisions of the selection or engagement, payment, or dismissal of the residents. Sentara did not have authority or control over the residents and program.

. Regarding Sentara, Plaintiff points to funding provided by Sentara to EVMS to support the residency program. Plaintiff also points out that Sentara could theoretically ban a resident from their facilities if the resident violated Sentara rules and regulations such as smoking. Plaintiff also points to specific sections of the contract between Sentara and EVMS regarding the residency program as evincing an agency relationship between the residents and Sentara. The Court finds that none of these arguments support Plaintiff's theory. The Court finds that Dr. Shin and Dr. Poulin were not agents of Sentara when caring for Ms. Barnes in the ICU.

Regarding Stokes, the Court agrees with Plaintiff's characterization of Stokes as "wearing two hats." Stokes was Ms. Barnes' attending physician for the purpose of the leg surgery. Stokes also was one of the physicians with privileges at one of the EVMS training venues (i.e. Sentara Norfolk General Hospital) who had agreed to serve as an EVMS faculty member for training residents. Stokes completed the surgical procedure, and Ms. Barnes was taken to the ICU. While there, Dr. Shin, as pursuant to her EVMS authorization, independently made the medical decision to place the central line. She obtained the necessary consent and along with Dr. Poulin, independently attempted the procedure. Stokes was in no way involved with the residents' independent actions. Plaintiff's counsel points to phone conversations between Dr. Shin and Dr. Stokes during the various central line attempts. The evidence concerning the substance of these calls was not sufficient to change the characterization of Dr. Shin's ICU activities to those of an agent of Stokes. Dr. Shin describes the calls as alerting Stokes that his patient "was doing poorly." There is no evidence that Shin was substituting for Stokes or that she was doing something she would normally do for him at his request. Additionally, Plaintiff alleges no negligent act by Stokes.

There is no legal theory by which to hold Stokes responsible to pay money damages for what went wrong in the ICU. Therefore the Court also finds Dr. Shin and Dr. Poulin were not agents of Dr. Stokes.

These parties were in a symbiotic relationship pertaining to the provision of care to a patient such as Ms. Barnes. Sentara provided the facility,

nursing care, and other support. Dr. Stokes was the attending physician with admitting privileges at this Sentara facility and who operated on Ms. Barnes within this Sentara facility. EVMS provided residents whom EVMS authorized to provide limited independent care to patients within the facility. Sentara provided a venue to the residents for their training. Stokes provided vascular surgical training to the EVMS residents.

Among these relationships, only the "EVMS-residents" relationship satisfies the four-prong test of agency. Only EVMS could be held liable as *respondeat superior* for money damages for the independent torts of their resident employees. However, the Court has ruled that EVMS is entitled to Sovereign Immunity and that the General Assembly has not waived that immunity.

### *Summary*

The Court finds that Dr. Shin and Dr. Poulin were the agents of EVMS when they treated Ms. Barnes, acting within the authority given to them by EVMS and under the control of EVMS. The residents were not the agents of Sentara or Dr. Stokes while they were treating Mrs. Barnes in the ICU.

The Court grants Sentara's Motion to Dismiss and grants Stokes' Motion to Dismiss for Lack of Duty. Having granted Stokes Motion to Dismiss for Lack of Duty, the Court does not reach Stokes' alternative claim of sovereign immunity for his activities as an EVMS faculty member.